UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SYED MURSHED,
  c/o Justly Prudent
  1140 3rd St. NE, Suite 2180,
  Washington, DC 20002

      Plaintiff,

      v.

JENNIFER BASTRESS TAHMASEBI,
in her official capacity as Acting
Chief Executive Officer of AmeriCorps,
  250 E Street SW
  Washington, DC 20525

      Defendant.
_____/

Case No. 1:26-cv-273

DEMAND FOR JURY TRIAL

## **COMPLAINT**

Plaintiff Syed Murshed ("Mr. Murshed"), for his complaint against Defendant Jennifer Bastress Tahmasebi, in her official capacity as Acting Chief Executive Officer of AmeriCorps ("AmeriCorps"), alleges the following:

1.     Mr. Murshed commenced this action seeking redress for the unlawful acts of race and national origin discrimination and retaliation taken against him by AmeriCorps over the course of nearly two years by senior agency officials who exercised final or near-final decision-making authority over Plaintiff's employment. These discriminatory and retaliatory acts systematically excluded Mr. Murshed, a highly accomplished federal IT executive of South Asian descent, from career advancement opportunities, subjected him to a hostile work environment, and ultimately will result in the termination of his nine-year federal career through a pretextual Reduction in Force.

2.      Mr. Murshed is a South Asian male who served as the Deputy Chief Information Officer at AmeriCorps at the NX-01 executive level, a senior executive role equivalent to GS-15/SES-track leadership. During his tenure, Mr. Murshed consistently earned Outstanding and Exceptional performance ratings, successfully served as Acting Chief Information Officer for over one year, and led critical agency modernization and artificial intelligence initiatives. Despite this exemplary record, senior agency officials engaged in a deliberate and escalating course of conduct to marginalize Mr. Murshed professionally, deny him promotions and leadership opportunities routinely afforded to similarly situated non-minority employees, and manufacture pretextual justifications for his ultimate separation from federal service.

3.      The discrimination against Mr. Murshed fits within a broader pattern of racial animus toward minority IT executives at AmeriCorps. The previous Chief Information Officer, a minority executive, received a substantial settlement in connection with retaliation claims against the agency, demonstrating systemic discriminatory treatment toward senior IT officials of color.

4.      AmeriCorps's discriminatory and retaliatory conduct included, among other things: making racially discriminatory comments during hiring processes that candidates of color were creating "a perception that we are hiring people of the same kind"; excluding Mr. Murshed from critical leadership meetings while continuing to include similarly situated non-minority employees; bypassing Mr. Murshed for Acting Deputy Chief Operating Officer and Acting Chief Information Officer positions in deviation from agency norms; unilaterally assigning the Chief Artificial Intelligence Officer role to a less-qualified non-minority candidate without conducting promised interviews; manipulating Mr. Murshed's performance rating after his supervisor was placed on administrative leave; and targeting Mr. Murshed for separation through a Reduction in

Force while retaining less-tenured, similarly graded non-minority executives. Each of these actions constituted a materially adverse employment action under Title VII.

5.      Mr. Murshed's claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e to 2000e-17.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1343(a) because this case involves questions of federal law and because Mr. Murshed seeks damages for violations of his civil rights.

7.      Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices were committed in this judicial district, the relevant employment records are maintained in this judicial district, and there is no other judicial district that has a more substantial connection to Mr. Murshed's claims. Venue is also proper in this judicial district under 28 U.S.C. § 1391(e) because a substantial part of the events or omissions giving rise to Mr. Murshed's claims occurred within this judicial district.

## THE PARTIES

8.      Plaintiff Syed Murshed is a South Asian male who is employed by AmeriCorps as the Deputy Chief Information Officer at the NX-01 executive level from 2020. Mr. Murshed resides in Sterling, Virginia.

9.      Defendant Jennifer Bastress Tahmasebi is the Acting Chief Executive Officer of AmeriCorps, acting through its senior officers, managers, and agents, the federal agency responsible for improving lives, strengthening communities, and fostering civic engagement through service and volunteering. AmeriCorps is a federal agency within the meaning of 42

U.S.C. § 2000e-16. The Chief Executive Officer is the proper party in actions against AmeriCorps by its employees that allege violations of civil rights in the workplace.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     In or around December 2024, Mr. Murshed initiated contact with the Equal Employment Opportunity ("EEO") office to begin his claims of unlawful discrimination, hostile work environment, and retaliation based on race and national origin against AmeriCorps.

11.     In January 2025, Mr. Murshed filed formal EEO complaints with AmeriCorps alleging claims of unlawful discrimination, hostile work environment, and retaliation on the basis of race and national origin (Agency Case Nos. 04-25-001 and 04-25-002).

12.     On September 23, 2025, the AmeriCorps Civil Rights Director, Michael Cokley, issued a Notice of Incomplete Investigation to Mr. Murshed, confirming that the agency's investigations of complaint numbers 04-25-001 and 04-25-002 had not been completed within the 180-day time frame required by federal regulation. The Notice informed Mr. Murshed of his right to request a hearing before a Commission Administrative Judge or to file a civil action in an appropriate United States District Court. The Notice further confirmed the agency's failure to timely investigate allegations involving senior leadership.

13.     The agency has not completed its investigation of Mr. Murshed's EEO complaints. More than 180 days have elapsed since Mr. Murshed filed his formal complaints with the agency.

14.     Mr. Murshed has fully complied with all prerequisites for this Court to assume jurisdiction over this action.

## BACKGROUND

### *Mr. Murshed's Employment and Exemplary Performance Record*

15.     In 2020, Mr. Murshed began working for AmeriCorps as the Deputy Chief Information Officer ("DCIO") at the NX-01 executive level, following a successful tenure in federal IT leadership.

16.     From 2020 through 2024, Mr. Murshed consistently received Outstanding and Exceptional performance ratings, demonstrating exemplary management and results-driven leadership. Mr. Murshed had no record of misconduct or disciplinary issues during his tenure at AmeriCorps. These ratings were documented and undisputed prior to 2025.

17.     From April 2022 through May 2023, Mr. Murshed served as Acting Chief Information Officer ("CIO") following the administrative leave of the prior CIO. In this capacity, Mr. Murshed led agency-wide digital modernization efforts, cybersecurity maturity enhancements, and enterprise data initiatives aligned with federal IT modernization mandates. Mr. Murshed also oversaw multi-million-dollar contracts, interagency collaboration, and governance with high levels of accountability without performance deficiencies or corrective action.

18.     The previous CIO, an African American executive, later received a settlement in excess of $600,000 in connection with retaliation claims against AmeriCorps. This settlement reflects a pattern of discriminatory treatment toward senior IT officials of color at the agency.

19.     In April 2023, AmeriCorps hired Prabhjot Bajwa as the new Chief Information Officer. Mr. Bajwa, also a minority executive, became Mr. Murshed's direct supervisor.

*Discriminatory Comments by Chief Operating Officer Gina Cross*

20.     On or about January 25, 2024, during a hiring panel discussion for a Senior IT Project Manager position, Chief Operating Officer Gina Cross made racially discriminatory statements regarding the agency's hiring practices. Specifically, Ms. Cross stated: "We are creating a perception that we are hiring people of the same kind." Ms. Cross also stated: "We are creating a perception that the dream team is being built and everyone looks the same." Mr. Murshed and his supervisor, Prab Bajwa, were offended by Ms. Cross's statements. Ms. Cross possessed final decision-making authority for employment decisions at AmeriCorps.

21.     Ms. Cross's statements directly referenced the selection of qualified candidates of color. The candidate under consideration, Richa Agarwal, had been rated the highest by all panel members in both rounds of interviews. Despite unanimous support for Ms. Agarwal, a qualified woman of color, the selection was overridden. Ms. Agarwal did not receive the position.

*False Accusations and Retaliatory Narrative by Deputy COO Jacob Sgambati*

22.     In or around April 2024, Deputy Chief Operating Officer Jacob Sgambati falsely accused Mr. Murshed of being "unprofessional" during a meeting. Mr. Sgambati was not present at the meeting in question. At all times during the meeting, Mr. Murshed remained respectful and professional.

23.     Mr. Sgambati refused to review the audio recording that would have disproven his false accusation. Instead, Mr. Sgambati escalated the matter to CIO Bajwa, requesting that Mr. Murshed be held accountable for conduct that did not occur.

24.     Mr. Sgambati's false accusation occurred shortly after Mr. Murshed raised concerns about irregular contracting practices and exclusionary leadership decisions. The accusation was used to create a false narrative of behavioral concerns, laying the groundwork for

retaliation and exclusion from leadership opportunities and occurred after Plaintiff engaged in protected opposition activity.

### Misrepresentation of Mr. Murshed's Conduct

25.     On October 29, 2024, Mr. Sgambati sent a summary to COO Gina Cross regarding a modernization meeting. In the summary, Mr. Sgambati falsely claimed that Mr. Murshed and CIO Bajwa took control of the meeting, did not allow for questions or dialogue, and presented an unauthorized proposal for a shared service product.

26.     A recording of the meeting directly contradicts Mr. Sgambati's account. The recording demonstrates that Mr. Murshed spoke for only about nine minutes out of a fifty-three-minute meeting. The recording further demonstrates that Mr. Murshed and CIO Bajwa explicitly clarified that they were not proceeding with a shared services solution at that time.

### Denial of Acting Deputy COO Appointment

27.     Mr. Sgambati's misrepresentation was part of a pattern of manufactured performance concerns designed to discredit Mr. Murshed and justify his exclusion from leadership opportunities.

28.     In November 2024, CIO Bajwa formally nominated Mr. Murshed for the Acting Deputy Chief Operating Officer position. This nomination was consistent with AmeriCorps' standard practice of appointing deputies to serve in acting capacities during leadership transitions.

29.     On or about November 19, 2024, Mr. Sgambati solicited nominations for the Acting Deputy COO role from all COO office heads. Mr. Sgambati also solicited a nomination from Chief Data Officer Andrea Gibbons, who was not an office head but reported to the CIO. By soliciting Ms. Gibbons's nomination, Mr. Sgambati provided her with an opportunity for

advancement that was not extended to Mr. Murshed. Mr. Sgambati's actions were contrary to past practices of the agency.

30.     Mr. Sgambati disregarded CIO Bajwa's nomination of Mr. Murshed. Mr. Sgambati refused to appoint anyone to the Acting Deputy COO role and explicitly cited subjective concerns, stating that he had reservations about Mr. Murshed and that Mr. Murshed demonstrated "loyalty to Prab."

31.     Mr. Sgambati's reference to Mr. Murshed's "loyalty to Prab" referred to Mr. Murshed's professional alignment with CIO Bajwa, a minority executive who was facing similar discriminatory treatment. Mr. Sgambati's comments demonstrated bias and retaliatory animus. This deviation lacked any legitimate, nondiscriminatory justification.

32.     Mr. Sgambati's deviation from agency practice denied Mr. Murshed key executive exposure and career progression, creating long-term reputational and financial harm.

### *Exclusion from Leadership Meetings*

*33.*     Beginning in or around October 2024, Mr. Murshed was excluded from modernization and governance meetings that he had regularly led as Deputy CIO. Mr. Murshed had been a key participant in these meetings for over two years.

34.     Despite Mr. Murshed's exclusion, Chief Data Officer Andrea Gibbons, a non-minority executive and peer-level official, continued to attend these meetings. Additionally, Deputy Chief Modernization Officer Carol Wiater, a non-minority executive who had only recently been promoted from a mid-level supervisor role, was added to the modernization meetings while Mr. Murshed was excluded.

35.     Mr. Murshed raised his exclusion from these meetings with COO Gina Cross on October 29, 2024, and again on November 1, 2024. Ms. Cross took no corrective action to address the exclusion.

36.     On December 16, 2024, while CIO Bajwa was out of the office, Mr. Murshed reached out to Mr. Sgambati as Acting CIO to request that he be added to COO meetings where the CIO typically participates. Mr. Sgambati indicated via electronic communication that he would add Mr. Murshed but failed to do so.

37.     On January 10, 2025, Mr. Sgambati held an all-day meeting for office heads but included Chief Data Officer Andrea Gibbons despite the fact that Ms. Gibbons was not an official office head at AmeriCorps.

38.     These systematic exclusions limited Mr. Murshed's visibility and participation in strategic decision-making, evidencing targeted professional marginalization based on his race and national origin. Such exclusion constitutes a material change in the terms and conditions of employment.

### *Discriminatory Assignment of Chief AI Officer Role*

39.     In early 2024, AmeriCorps announced plans to designate a Chief Artificial Intelligence Officer ("CAIO") to lead the agency's AI and emerging technology strategy.

40.     Mr. Murshed possessed extensive qualifications for the CAIO role. He had led AI initiatives at AmeriCorps, including data modernization, automation, and analytics integration. Mr. Murshed had directly implemented AI solutions at the agency. Mr. Murshed also held an AI certification from the University of Pennsylvania.

41.     On November 13, 2024, COO Gina Cross sent an email to Mr. Murshed, CIO Bajwa, and CDO Gibbons stating that she would host interviews for Chief AI officer the week of

December 9-13, 2024 and would make a recommendation to the CEO on or around December 13, 2024. Mr. Sgambati was assigned responsibility for scheduling the interviews. On December 6, 2024, Mr. Murshed confirmed his availability for interviews, but Mr. Sgambati never scheduled an interview for Mr. Murshed.

42.    Mr. Sgambati unilaterally assigned the CAIO role to Chief Data Officer Andrea Gibbons, a non-minority executive who had substantially less AI implementation experience than Mr. Murshed.

43.    In or around July 2024, Ms. Cross communicated to CIO Bajwa that she would not be forced into hiring Mr. Murshed for the CAIO role and that she planned to appoint the CDO instead. Ms. Cross also stated that it would be good when Mr. Murshed leaves the agency so that they can hire a qualified candidate despite Mr. Murshed's exceptional and outstanding performance ratings.

44.    The bypass of Mr. Murshed for the CAIO role directly contradicted the agency's established merit-based approach and deprived Mr. Murshed of visibility, leadership advancement, and significant compensation. CAIO roles in the federal and private sectors average approximately $344,000 annually, nearly $150,000 more than Mr. Murshed's salary at the time.

45.    In or around July 2024, Ms. Cross made a disparaging comment about Mr. Murshed, stating that, "the impression is that Syed is the pet." This comment contributed to a hostile and demeaning atmosphere directed at Mr. Murshed.

### Hostile Work Environment

46.    Also in July 2024, AmeriCorps retained a contractor called LETS to facilitate team building and team cohesion exercises through sessions facilitated by an industrial

psychologist and performance coach. Mr. Sgambati and Ms. Cross weaponized the contract to attempt to coerce information against the CIO and DCIO.

47.     Mr. Sgambati shared a meeting agenda with Mr. Murshed but misrepresented the actual meeting agenda under false pretenses. During the sessions, the facilitators asked provoking questions designed to elicit negative information about CIO Bajwa and Mr. Murshed. The facilitators later admitted that they were doing so based on direction from Mr. Sgambati and Ms. Cross.

48.     An OIT Division Chief provided a written statement confirming that the LETS sessions were used to collect information against two leaders who are persons of color, based on direction from Mr. Sgambati and Ms. Cross.

49.     On February 14, 2025, CIO Prabhjot Bajwa was placed on administrative leave based on allegations that Mr. Murshed believes were fabricated.

### Bypass for Acting CIO Position

50.     As Deputy CIO, Mr. Murshed was the logical choice to serve as Acting CIO during Mr. Bajwa's absence. Mr. Murshed had previously served successfully as Acting CIO for over one year between April 2022 and May 2023. Agency practice at AmeriCorps was to appoint deputies to serve in acting capacities when office heads were on leave.

51.     Mr. Sgambati, who was serving as Acting COO at the time, bypassed Mr. Murshed and instead appointed Sandra Washington to serve as Acting CIO. Ms. Washington was Mr. Murshed's direct subordinate and had documented performance deficiencies. Mr. Sgambati intentionally bypassed Mr. Murshed for the role despite having knowledge of Mr. Murshed's seniority and history of prior service.

52.     Every other agency office at AmeriCorps followed the deputy-to-acting norm during leadership transitions. When the General Counsel and Chief Human Capital Officer departed the agency in 2025, their respective deputies assumed acting leadership roles consistent with agency practice. This standard protocol was followed for every other agency office but was not followed for Mr. Murshed. The deviation from this practice with respect to Mr. Murshed was targeted and retaliatory.

53.     Mr. Murshed reported this discriminatory bypass to EEO Specialist Michael Cokley, expanding his formal complaint.

*Manipulation of 2024 Performance Rating*

54.     On or about February 7, 2025, CIO Bajwa verbally confirmed to Mr. Murshed that his 2024 performance rating would be Outstanding.

55.     On February 14, 2025, CIO Bajwa was placed on administrative leave.

56.     In March 2025, the Office of Human Capital reassigned Mr. Murshed's performance review to Mr. Sgambati. Mr. Sgambati had never supervised Mr. Murshed. Mr. Sgambati lacked authority or supervisory responsibility over Mr. Murshed's performance evaluation

57.     Mr. Sgambati downgraded Mr. Murshed's 2024 performance rating from Outstanding to Exceptional.

58.     From March through July 2025, Mr. Murshed raised repeated concerns about the manipulation of his performance rating to the Office of Human Capital, including to Jennifer Page, Marcia Gresham, Sharnece Holmes and Acting Deputy COO Jennifer Swinehart. Despite multiple assurances that the matter would be reviewed, no correction was made.

59.    Mr. Murshed's performance rating later appeared as "N/A" in his Reduction in Force file, eliminating retention credit and directly impacting his job security. The use of an "N/A" designation violated OPM Reduction in Force regulations, including 5 C.F.R. §§ 351.504–351.505, which require agencies to calculate retention standing based on an employee's official performance appraisal of record.

### *Retaliatory Reduction in Force*

60.    In March 2025, Mr. Sgambati departed AmeriCorps under the Deferred Resignation Program. Jill Graham, who had participated in denying Mr. Murshed's request for a reasonable accommodation during his FMLA leave, assumed the role of Acting COO.

61.    In or around April 2025, Mr. Murshed was placed on administrative leave while AmeriCorps prepared a Reduction in Force that would eliminate his position.

62.    Mr. Sgambati asked Mr. Murshed whether there was a "priority order" for probationary employees during an initial round of reductions. Similarly graded executives, including Chief Information Security Officer Bilal Razzaq and Chief Data Officer Andrea Gibbons, were retained despite the Reduction in Force. Mr. Murshed, a minority executive with longer tenure and an exemplary performance record, was targeted for separation despite a higher retention standing that was reduced as a result of Defendant's intentional manipulation of his performance record.

63.    In September 2025, Mr. Murshed received a Reduction in Force separation notice stating that his nine-year federal career will end, effective December 12, 2025.

64.    The RIF documentation falsely listed Mr. Murshed's 2024 rating as "N/A," omitting his verified exceptional performance rating and further reducing his retention standing.

65.     Acting COO Jill Graham, who was aware of Mr. Murshed's ongoing EEO complaints and supporting evidence, approved the RIF separation.

66.     On November 17, 2025, Mr. Murshed notified AmeriCorps that the Continuing Resolution ("CR") prohibited the initiation or implementation of a Reduction in Force ("RIF") due to the absence of full-year appropriations and potential Anti-Deficiency Act violations, and requested confirmation that the RIF notices would be rescinded in accordance with Section 120 of the CR. On November 18, 2025, AmeriCorps formally rescinded Plaintiff's RIF notice pursuant to Section 120(a) of H.R. 5371; however, despite the rescission, AmeriCorps required Mr. Murshed to remain on indefinite administrative leave, rather than restoring him to active duty, thereby continuing the adverse employment action.

### *Agency Failure to Conduct an Impartial Investigation*

67.     During the EEO investigation process, EEO Specialist Shelba Bradley refused to interview key witnesses. She did not interview Gina Cross in December while she was still an AmeriCorps employee, despite her availability during Ms. Cross's final week at AmeriCorps. In January 2025, Ms. Bradley declined to contact or interview former COO Gina Cross, despite being provided with Ms. Cross's federal and personal contact information.

68.     The agency also failed to interview Mr. Sgambati while he was still employed at AmeriCorps. Mr. Sgambati remained available for interview and was within the agency's control until mid-March 2025, when he departed under the Deferred Resignation Program.

69.     Based on information Mr. Murshed received from the EEOC Office in September 2025, the investigation was not conducted diligently and key witnesses were not interviewed while they were employed by AmeriCorps.

70.    The agency's failure to interview the primary decision-makers responsible for the discriminatory and retaliatory actions against Mr. Murshed demonstrates a failure to conduct an impartial investigation.

**<u>HARM CAUSED</u>**

71.    As a result of AmeriCorps's discriminatory and retaliatory actions, Mr. Murshed has suffered and continues to suffer substantial harm, including economic losses, emotional distress, reputational damage, and threatened and ongoing harm to his federal career.

72.    Mr. Murshed was denied the Acting Deputy Chief Operating Officer position in November 2024, which would have provided him with increased salary, executive visibility, and career advancement opportunities. The Deputy COO position carries an annual salary of approximately $207,500, compared to Mr. Murshed's DCIO salary of $195,200.

73.    Mr. Murshed was denied the Chief Artificial Intelligence Officer role in 2024 and 2025, despite his superior qualifications and the agency's initial commitment to conduct interviews for the position. CAIO roles in the federal and private sectors command an average annual salary of approximately $344,000. The denial of this opportunity has resulted in significant lost earnings and diminished career trajectory.

74.    Mr. Murshed was bypassed for the Acting Chief Information Officer position in February 2025, despite having previously served successfully in that role for over one year and despite agency norms that deputies assume acting roles during leadership transitions. This bypass denied Mr. Murshed executive-level experience and visibility that would have enhanced his career prospects.

75.    Mr. Murshed's 2024 performance rating was manipulated from Outstanding to Exceptional, and subsequently listed as "N/A" in his RIF documentation. This manipulation

directly reduced Mr. Murshed's retention standing and contributed to his selection for separation through the Reduction in Force.

76.     As a result of AmeriCorps's discriminatory and retaliatory actions, including the issuance of a Reduction in Force notice later rescinded and Mr. Murshed's continued placement on indefinite administrative leave, Mr. Murshed has suffered and continues to suffer substantial economic and professional harm. This harm includes the loss of professional and career advancement opportunities, threatened and impaired continuity of benefits and retirement accrual, uncertainty regarding accrued leave, damage to his professional standing, and significant impairment of his future earning potential, promotional opportunities, and ability to continue building his federal career and retirement.

77.     Mr. Murshed has been required to expend significant resources in pursuing his civil rights claims, including time, effort, and expenses associated with the EEO complaint process and this litigation.

78.     The discriminatory and retaliatory actions taken against Mr. Murshed have caused him significant emotional distress, mental anguish, anxiety, and humiliation.

79.     Mr. Murshed experienced emotional distress as a result of being excluded from leadership meetings that he had attended and led for over two years, which limited his ability to perform his duties effectively and marginalized him professionally.

80.     Mr. Murshed experienced anxiety and humiliation resulting from racially discriminatory comments made by senior leadership, including COO Cross's statements about hiring "people of the same kind" and her characterization of Mr. Murshed as "the pet."

81.    Mr. Murshed experienced mental anguish caused by the false accusations made against him by Mr. Sgambati, the subsequent damage to his professional reputation, and the retaliatory actions that followed his reporting of concerns about discriminatory treatment.

82.    Mr. Murshed experienced psychological distress stemming from the hostile work environment fostered by Ms. Cross and Mr. Sgambati, including the weaponization of the LETS contractor sessions to coerce negative information about minority executives.

83.    The stress caused by AmeriCorps's unlawful conduct has required Mr. Murshed to seek medical attention and has negatively impacted his mental and physical health.

84.    The false accusations of unprofessional conduct made by Mr. Sgambati, and the subsequent creation of a false narrative regarding Mr. Murshed's behavior, have damaged Mr. Murshed's professional reputation within AmeriCorps and the broader federal IT community.

85.    The manipulation of Mr. Murshed's performance rating from Outstanding to Exceptional, and the subsequent listing of his rating as "N/A" in official documentation, have created a false and misleading record of his professional performance. As a result, Mr. Murshed has been deprived of access to a complete and accurate performance record and is unable to submit a recent performance appraisal when applying for equivalent positions. The most recent performance evaluation available to Mr. Murshed is from performance year 2023. When combined with AmeriCorps's repeated placement of Mr. Murshed in Reduction in Force status, these actions have materially impaired his ability to compete for comparable employment, exposed him to continued RIF vulnerability, and foreseeably undermined his prospects for securing equivalent executive positions, thereby causing ongoing and substantial career harm.

86.    Mr. Murshed's future separation through the Reduction in Force, following years of exemplary service and consistently outstanding performance, will harm his professional standing and will negatively impact his ability to obtain comparable employment in the future.

87.    AmeriCorps's unlawful conduct has not ceased. Mr. Murshed continues to suffer the consequences of AmeriCorps's discriminatory and retaliatory actions, including the loss of his federal employment, diminished career prospects, and ongoing emotional distress.

88.    AmeriCorps has failed to take adequate remedial measures to address the discrimination and retaliation experienced by Mr. Murshed or to correct the manipulation of his performance records.

## COUNT I
### Unlawful Discrimination in Violation of Title VII of the Civil Rights Act of 1964

89.    Mr. Murshed incorporates herein by reference the allegations set forth in paragraphs 1 through 88, above.

90.    Title VII of the Civil Rights Act of 1964, as amended, makes clear that all personnel actions affecting employees in federal agencies shall be made free from any discrimination based on race, color, religion, sex, or national origin.

91.    AmeriCorps is a federal agency within the meaning of Title VII.

92.    Mr. Murshed is a member of a protected class on the basis of his race and national origin. Mr. Murshed is of South Asian descent.

93.    Throughout his employment at AmeriCorps, Mr. Murshed performed his job duties in a manner that met or exceeded the agency's legitimate expectations. Mr. Murshed consistently received Outstanding and Exceptional performance ratings. Mr. Murshed successfully served as Acting Chief Information Officer for over one year. Mr. Murshed led critical modernization and artificial intelligence initiatives for the agency.

94.    Despite his exemplary performance, Mr. Murshed was subjected to adverse employment actions because of his race and national origin.

95.    COO Gina Cross made explicit race-based comments during hiring discussions, stating that the agency was "creating a perception that we are hiring people of the same kind" and that "the dream team is being built and everyone looks the same." These comments demonstrated that Ms. Cross harbored racial animus toward employees and candidates of color, including Mr. Murshed.

96.    Ms. Cross's racial animus manifested in her treatment of Mr. Murshed. Ms. Cross stated that she would not be "forced into hiring" Mr. Murshed for the CAIO role and that it would be "good when [Mr. Murshed] leave[s] the agency so that they can hire a qualified candidate." These statements, combined with Ms. Cross's racially discriminatory comments during hiring discussions, demonstrate that Ms. Cross's opposition to Mr. Murshed's advancement was motivated by his race and national origin.

97.    AmeriCorps subjected Mr. Murshed to the following adverse employment actions because of his race and national origin: (a) excluding Mr. Murshed from critical leadership meetings, including modernization meetings, COO meetings, and CEO meetings, while continuing to include similarly situated non-minority employees such as Chief Data Officer Andrea Gibbons and Deputy Chief Modernization Officer Carol; (b) denying Mr. Murshed the Acting Deputy Chief Operating Officer position in November 2024, despite CIO Bajwa's formal nomination and despite agency practice of appointing deputies to acting roles during leadership transitions; (c) assigning the Chief Artificial Intelligence Officer role to Chief Data Officer Andrea Gibbons, a non-minority executive with limited AI implementation experience, without conducting the interviews that had been promised and without considering Mr. Murshed's

superior qualifications; (d) bypassing Mr. Murshed for the Acting Chief Information Officer position in February 2025 in favor of his subordinate, Sandra Washington, despite Mr. Murshed's prior successful service as Acting CIO and despite agency norms that deputies assume acting roles; (e) manipulating Mr. Murshed's 2024 performance rating from Outstanding to Exceptional after CIO Bajwa was placed on administrative leave, and subsequently listing the rating as "N/A" in RIF documentation; (f) targeting Mr. Murshed for separation through the Reduction in Force while retaining similarly graded non-minority executives, including Chief Data Officer Andrea Gibbons and (g) issuing a Reduction in Force notice identifying Mr. Murshed for separation effective December 12, 2025, later rescinded pursuant to federal law, while continuing to place Mr. Murshed on indefinite administrative leave and withholding restoration to active duty.

98.     Similarly situated employees who are not members of Mr. Murshed's protected class were treated more favorably than Mr. Murshed. For instance, Chief Data Officer Andrea Gibbons, a non-minority executive, was included in leadership meetings from which Mr. Murshed was excluded. Ms. Gibbons was appointed to the CAIO role without interview despite having less AI implementation experience than Mr. Murshed. Ms. Gibbons was retained during the Reduction in Force while Mr. Murshed was separated. Deputy Chief Modernization Officer Carol Wiater, a non-minority executive who had recently been promoted from a mid-level supervisor role, was added to modernization meetings while Mr. Murshed, who had participated in those meetings for over two years, was excluded.

99.     The pattern of discrimination against Mr. Murshed is consistent with a broader pattern of discriminatory treatment toward minority IT executives at AmeriCorps. The previous

CIO, a minority African American executive, alleged various claims of unlawful retaliation against the agency, which ended in a substantial settlement.

100.    Mr. Murshed's race and national origin were determining factors in AmeriCorps's decisions to subject him to the adverse employment actions described herein.

101.    As a direct and proximate result of AmeriCorps's unlawful discrimination, Mr. Murshed has suffered and continues to suffer substantial harm.

**COUNT II**
**Retaliation in Violation of Title VII of the Civil Rights Act of 1964**

102.    Mr. Murshed incorporates herein by reference the allegations set forth in paragraphs 1 through 88, above.

103.    Title VII prohibits employers from retaliating against an employee because the employee has opposed any practice made unlawful by Title VII or because the employee has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

104.    Mr. Murshed engaged in protected activity under Title VII by: (a) contacting the EEO office in December 2024 to initiate a complaint regarding the discriminatory treatment he was experiencing; (b) filing formal EEO complaints (Agency Case Nos. 04-25-001 and 04-25-002) in January 2025, alleging discrimination based on race and national origin; and (c) expanding his EEO complaint in February 2025 to include the discriminatory bypass for the Acting CIO position.

105.    Mr. Murshed also engaged in protected activity by opposing practices he reasonably believed to be discriminatory. Mr. Murshed raised concerns about his exclusion from leadership meetings to COO Gina Cross on October 29, 2024 and November 1, 2024. Mr.

Murshed raised concerns about the manipulation of his performance rating to the Office of Human Capital from March through July 2025.

106.    AmeriCorps was aware of Mr. Murshed's protected activity. Agency officials, including those responsible for the adverse actions against Mr. Murshed, knew that Mr. Murshed had filed EEO complaints and had raised concerns about discriminatory treatment.

107.    After engaging in the protected activity reference above, AmeriCorps took several adverse actions against Mr. Murshed, including: (a) bypassing Mr. Murshed for the Acting Chief Information Officer position in February 2025, shortly after Mr. Murshed filed his formal EEO complaints in January 2025; (b) reassigning Mr. Murshed's performance review to Mr. Sgambati, who had never supervised Mr. Murshed, and permitting Mr. Sgambati to downgrade Mr. Murshed's rating from Outstanding to Exceptional; (c) failing to correct the manipulation of Mr. Murshed's performance rating despite Mr. Murshed's repeated complaints to the Office of Human Capital; (d) listing Mr. Murshed's 2024 performance rating as "N/A" in his RIF documentation, thereby reducing his retention standing; (e) placing Mr. Murshed on administrative leave in April 2025 while preparing the Reduction in Force; (f) targeting Mr. Murshed for separation through the Reduction in Force while retaining similarly graded employees; and (g) rescinding the Reduction in Force notice pursuant to federal law while continuing to subject Mr. Murshed to indefinite administrative leave and withholding restoration to active duty.

108.    The adverse actions taken against Mr. Murshed were causally connected to his protected activity. The temporal proximity between Mr. Murshed's EEO complaints and the escalation of adverse actions against him supports an inference of retaliation. Mr. Murshed filed his formal EEO complaints in January 2025. Within weeks, he was bypassed for the Acting CIO

position. His performance rating was subsequently manipulated. He was targeted for separation through the Reduction in Force.

109.    Acting COO Jill Graham, who approved Mr. Murshed's future separation, was aware of Mr. Murshed's ongoing EEO complaints and the evidence supporting those complaints.

110.    The agency's failure to conduct an impartial investigation of Mr. Murshed's EEO complaints further demonstrates retaliatory animus. EEO Specialist Shelba Bradley refused to interview key witnesses, including COO Gina Cross during her final week at the agency, and failed to interview Mr. Sgambati while he remained employed at AmeriCorps.

111.    AmeriCorps's actions would dissuade a reasonable employee from engaging in protected activity under Title VII.

112.    AmeriCorps's retaliatory actions were intentional, willful, and taken with reckless disregard for Mr. Murshed's rights under Title VII.

113.    As a direct and proximate result of AmeriCorps's unlawful retaliation, Mr. Murshed has suffered and continues to suffer substantial harm.

## COUNT III
### Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964

114.    Mr. Murshed incorporates herein by reference the allegations set forth in paragraphs 1 through 88, above.

115.    Title VII prohibits employers from subjecting employees to a hostile work environment based on race or national origin. A work environment violates Title VII when it is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.

116.    Mr. Murshed is a member of a protected class on the basis of his race and national origin. Mr. Murshed is of South Asian descent.

117.    AmeriCorps subjected Mr. Murshed to unwelcome conduct based on his race and national origin. This conduct included: (a) COO Gina Cross's racially discriminatory comments that the agency was "creating a perception that we are hiring people of the same kind" and that "the dream team is being built and everyone looks the same"; (b) Ms. Cross's statement that it would be "good when [Mr. Murshed] leave[s] the agency so that they can hire a qualified candidate," despite Mr. Murshed's exceptional performance record; (c) Ms. Cross's disparaging characterization of Mr. Murshed as "the pet"; (d) Deputy COO Jacob Sgambati's false accusations that Mr. Murshed was "unprofessional," made without reviewing available evidence that contradicted the accusation; (e) Mr. Sgambati's intentional misrepresentation of Mr. Murshed's conduct at the October 29, 2024 modernization meeting; (f) Mr. Sgambati's statement that he had "reservations" about Mr. Murshed and that Mr. Murshed was "loyal to Prab," using Mr. Murshed's professional alignment with a minority CIO as a basis to deny him advancement; (g) the weaponization of the LETS contractor sessions to coerce negative information about Mr. Murshed and CIO Bajwa, both minority executives, based on direction from Mr. Sgambati and Ms. Cross; (h) the systematic exclusion of Mr. Murshed from leadership meetings while including non-minority peers, thereby marginalizing Mr. Murshed professionally; and (i) the creation of a false narrative regarding Mr. Murshed's performance and conduct, designed to justify discriminatory treatment.

118.    The hostile conduct directed at Mr. Murshed was severe and pervasive. The conduct occurred repeatedly over a period of approximately two years. The conduct emanated from the highest levels of agency leadership, including the Chief Operating Officer and Deputy

Chief Operating Officer. The conduct targeted Mr. Murshed's professional reputation, limited his ability to perform his duties, denied him advancement opportunities, and ultimately resulted in ongoing and material adverse employment actions, including his placement on indefinite administrative leave and continued exclusion from meaningful work and leadership opportunities.

119.    The hostile work environment created by AmeriCorps altered the conditions of Mr. Murshed's employment. Mr. Murshed was excluded from meetings essential to his role. Mr. Murshed was subjected to false accusations and manufactured performance concerns. Mr. Murshed was denied promotions and leadership opportunities. Mr. Murshed experienced significant stress, anxiety, and emotional distress that required medical attention.

120.    Mr. Murshed subjectively perceived the work environment to be hostile and abusive. A reasonable person in Mr. Murshed's position would also find the work environment to be hostile and abusive.

121.    AmeriCorps knew or should have known about the hostile work environment and failed to take prompt and effective remedial action. Mr. Murshed raised concerns about discriminatory treatment to COO Gina Cross, who took no corrective action. Mr. Murshed raised concerns about the manipulation of his performance rating to the Office of Human Capital, which failed to correct the rating despite multiple assurances. Mr. Murshed filed formal EEO complaints, after which the discriminatory and retaliatory conduct intensified rather than ceased.

122.    AmeriCorps's conduct in subjecting Mr. Murshed to a hostile work environment was intentional, willful, and taken with reckless disregard for Mr. Murshed's rights under Title VII.

123.    As a direct and proximate result of AmeriCorps's creation and maintenance of a hostile work environment, Mr. Murshed has suffered and continues to suffer substantial harm.

## PRAYER FOR RELIEF

Plaintiff Syed Murshed respectfully requests that the Court enter judgment on the Complaint, in his favor and against Defendant Jennifer Bastress Tahmasebi, in her official capacity as Acting Chief Executive Officer of AmeriCorps, as follows:

A.    Declare that AmeriCorps violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against Mr. Murshed on the basis of his race and national origin, by retaliating against Mr. Murshed for engaging in protected activity, and by subjecting Mr. Murshed to a hostile work environment;

B.    Award Mr. Murshed appropriate amounts of backpay, in fair and reasonable amounts to be determined at trial;

C.    Award Mr. Murshed appropriate amounts of front pay, or in the alternative, order Mr. Murshed's reinstatement to his position as Deputy Chief Information Officer or to an equivalent position, with restoration of all rights, privileges, and seniority;

D.    Award Mr. Murshed compensatory damages for the harm he suffered as a result of AmeriCorps's unlawful conduct, in a fair and reasonable amount to be determined at trial;

E.    Order AmeriCorps to correct Mr. Murshed's official personnel records to reflect his verified 2024 performance rating and to expunge any false or misleading information from his records;

F.    Award Mr. Murshed pre-judgment interest and post-judgment interest;

G.    Award Mr. Murshed the costs and fees he incurred in connection with this action, including his reasonable attorney fees;

H.     Order AmeriCorps to implement training for managers and supervisors on the prevention of race and national origin discrimination, retaliation, and hostile work environment, in a manner consistent with Title VII and EEOC guidance; and

I.     Grant Mr. Murshed such other relief as the Court deems just and proper, including additional injunctive and declaratory relief as may be required in the interest of justice.

Dated: January 30, 2026

/s/ Jordan D. Howlette
JORDAN D. HOWLETTE
DC Bar No.: 155982
Managing Attorney
Justly Prudent
1140 3rd St. NE, Suite 2180
Washington, DC 20002
Tel: (202) 921-6005
Fax: (202) 921-7102
jordan@justlyprudent.com
Counsel for Plaintiff